UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HATEM EL SSAYED,

   Plaintiff,             Case No. 1:12-CV-797

v.

                       HON. GORDON J. QUIST

WESTERN MICHIGAN UNIVERSITY,
et al.,

   Defendants.
              /

## OPINION REGARDING WESTERN MICHIGAN
## UNIVERSITY DEFENDANTS' MOTION TO DISMISS

Plaintiff Hatem El Ssayed, proceeding *pro se*, has sued Western Michigan University (WMU), WMU employees John Dunn, Rebecca Solomon, Joyce Lew, Adam Wall, David Barnes, Alan Kehew, Evelyn Winfield,[1] Lee Ryder, Mohamed Sultan, Carla Koretsky, and Blaine Kalafut (collectively the WMU Defendants), and WMU students Mohamed Ahmed, Abdu Ali Abu El Magd, Ibrahim Sheta, and Tamer El Bayoumi.[2] Plaintiff's claims arise out of his dismissal from a WMU doctoral program.

The WMU Defendants have filed a Motion to Dismiss, seeking dismissal of all claims against them in the Second Amended Complaint. The matter is now fully briefed and is ready for decision. For the following reasons, the Court will grant the motion and dismiss all claims against the WMU Defendants. In addition, because Plaintiff's claims against the student Defendants are based on the same statutes asserted in the claims against the WMU Defendants, the Court will also dismiss those claims.

---

[1] Erroneously named as Evelyn Winterfield in the Second Amended Complaint.

[2] The Court notes that the student Defendants have not been served as of the date of this Opinion.

## I. BACKGROUND

Plaintiff, an Egyptian national, was enrolled at WMU in a doctoral program in the Department of Geosciences. Plaintiff began the doctoral program in January 2008. (Dkt. #24-1 Page ID 219.) Plaintiff alleges that he was doing well in the program and had no difficulties until he complained that Dr. Barnes, the instructor of Plaintiff's GEOS 6450 class, moved his laboratory and lectures unofficially off campus. Plaintiff alleges that some professors and students turned against Plaintiff because of his complaints against Dr. Barnes. (*Id.*) Plaintiff also claims that when he spoke with his professor (presumably Dr. Barnes), his professor became very angry and mentioned Plaintiff's alleged claim of a Jewish Conspiracy against Plaintiff by the Department of Geosciences. Plaintiff complained of discrimination to WMU's international office, but instead of helping Plaintiff, the international office sent a "High Notification" to other offices on the WMU campus that Plaintiff was frustrated and could hurt others on campus. (*Id.*)

Plaintiff alleges that Ibrahim Sheta and other Egyptian students complained to the Egyptian Embassy that Plaintiff was conducting an Islamic lobby against Hosni Mubarak and the Egyptian Government. (*Id.* at page ID 220.) In response, the Egyptian Embassy withdrew its support for Plaintiff and denied his transfer to another school. Plaintiff requested additional time from the Department of Geosciences to resubmit his "proposal exam," but his request was denied. Plaintiff was dismissed from the doctoral program in April 2010. Plaintiff alleges that during this time, the "American Defendants"—who the Court assumes to be the WMU Defendants—conspired to kick Plaintiff out of the United States based on his religion and race. (*Id.*)

## II. MOTION STANDARD

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986)). A court must accept all of the plaintiff's well-pleaded factual allegations as true and construe them in a light most favorable to the plaintiff to determine whether the complaint establishes a valid basis for relief. *See Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). However, this rule does not apply to legal conclusions or unwarranted factual inferences. *Severe Records, LLC v. Rich*, 658 F.3d 571, 578 (6th Cir. 2011). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

**A.      The WMU Defendants' Motion**

In his Second Amended Complaint, Plaintiff has named each Defendant in separate counts, each of which alleges multiple violations by the named Defendant. Because Plaintiff contends that multiple Defendants violated some of the same statutes, the Court will analyze the claims against the WMU Defendants on a statute-by-statute basis.

### 1. Violation of M.C.L. § 388.1893

Plaintiff contends that Defendants Barnes, Winfield, Koretsky, and Ryder violated M.C.L. § 388.1893, which provides:

> A public university receiving funds under this article and also subject to the family educational rights and privacy act (FERPA), 20 USC 1232g, 34 CFR part 99, shall, when requested, provide information from the records of a student to any person or persons to whom the student has authorized disclosure on a written consent form pursuant to 34 CFR 99.30.

M.C.L. § 388.1893. Plaintiff's allegations fail to demonstrate that Defendants Barnes, Winfield, Koretsky, or Ryder violated this provision, which places an affirmative disclosure obligation on a public university. Plaintiff alleges that Defendant Barnes violated this provision by *releasing* Plaintiff's academic information to other faculty members in the Department of Geosciences; that Defendant Winfield performed a stress test on Plaintiff without his consent; and that Defendant Koretsky sent a letter to the Egyptian Embassy including non-academic information about Plaintiff. None of these allegations show that Defendants violated § 388.1893 by failing to provide information.

To the extent Plaintiff intends to allege that Defendants violated the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, such claim would still fail. Regarding Plaintiff's claim that Defendant Barnes released academic information to other members of the Department of Geosciences, FERPA specifically allows release of student information to "other school officials, including teachers within the educational institution . . . who have been determined by such agency or institution to have legitimate educational interests . . . ." 20 U.S.C. § 1232g(b)(1)(A). Plaintiff does not allege that the persons within the Department of Geosciences to whom Defendant Barnes provided information lacked a legitimate educational interest in the information. As for Plaintiff's allegation that Defendant Winfield performed a stress test on Plaintiff

4

without his consent, the Court is unable to discern how such conduct could have violated FERPA. Plaintiff's claim against Defendant Koretsky fails because schools are permitted to provide information "in connection with a student's . . . receipt of . . . financial aid." 20 U.S.C. § 1232g(b)(1)(D). Because the Egyptian government sponsored Plaintiff in the doctoral program at WMU, Koretsky was permitted to disclose information to the Egyptian Embassy concerning Plaintiff's academic performance and standing. In addition, Plaintiff's claim against Defendant Ryder for improperly disclosing information to immigration officials fails because schools with non-immigrant international students, such as Plaintiff, are required to report information and matters regarding such students, including changes of address and enrollment, and discipline, to immigration officials. *See* 8 C.F.R. § 214.3(g)(1)–(2). Finally, regardless of his allegations, Plaintiff cannot maintain a claim for violation of FERPA because FERPA does not provide Plaintiff a private right of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287–88, 122 S. Ct. 2268, 2277–78 (2002). Contrary to Plaintiff's argument, the Supreme Court's decision in *Gonzaga University* was not based on Gonzaga University's status as a private institution. Instead, the Court examined the text of the statute and concluded that it does not support an implied right of action. Thus, Plaintiff's public/private distinction is irrelevant, and his claims—to the extent based on FERPA—must fail. *See Fuller v. Schoolcraft Coll.*, __ F. Supp. 2d __, 2012 WL 5493378, at *15 (E.D. Mich. Nov. 13, 2012) (dismissing the plaintiff's FERPA claim because "Plaintiff has no private right of action under FERPA").

        2.      **Violation of M.C.L. § 445.1671**

Plaintiff alleges that Defendants Solomon, Lew, Koretsky, Wall, Sheta, and Kalafut violated M.C.L. § 445.1671, which pertains to maintenance of business records, accounts, and other documents by mortgage brokers, lenders, and servicers. Nothing in Plaintiff's Amended Complaint

suggests that his claims have anything to do with mortgage brokers or lenders or that any Defendant qualifies as such. Accordingly, the Court will dismiss these claims.

### 3. Violation of State Criminal Laws

Plaintiff alleges that Defendant Sultan violated M.C.L. § 750.122, which prohibits making promises or threats to, or attempting to influence, witnesses in official proceedings; that Defendants Lew, Koretsky, and Kehew violated M.C.L. § 750.411s, which prohibits the posting of certain messages though electronic medium without the victim's consent; and that Defendant Kalafut violated M.C.L. § 752.11, which render's a public official's willful and knowing failure to uphold or enforce the law a misdemeanor. Plaintiff's claims based on these statutes, which are all criminal statutes, fail because criminal statutes generally do not provide a private right of action to private citizens. *See People v. Herrick*, 216 Mich. App. 594, 601, 550 N.W.2d 541, 544 (1996); *see also Am. Postal Workers Union, AFL-CIO v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) (noting that "the general rule is that a private right of action is not maintainable under a criminal statute"). Although Michigan courts have held that in certain situations a private remedy for damages may be inferred from a criminal statute, *see Lash v. City of Traverse City*, 479 Mich. 180, 192–93, 735 N.W.2d 628, 636–37 (2007) (citing *Gardner v. Wood*, 429 Mich. 290, 414 N.W.2d 706 (1987)), Plaintiff cites no case holding that a private right of action may be inferred from any of the criminal statutes on which Plaintiff relies. Moreover, Plaintiff offers no argument or analysis to support inferring a private right of action from any of those statutes. Accordingly, the Court will dismiss Plaintiff's claims based on the Michigan criminal statutes.

### 4. Violation of Federal Criminal Statutes

Plaintiff alleges that Defendants Sultan, Koretsky, Kehew, Wall, Kalafut, Ryder, and Dunn violated 18 U.S.C. §§ 241 and 242. These statutes are criminal statutes that do not provide a private

6

right of action. *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) ("Finally, the district court properly dismissed Oguaju's claim pursuant to 18 U.S.C. §§ 241 or 242 because Oguaju has no private right of action under either of these criminal statutes.") (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994)); *see also Bey v. Smith*, No. 10-14641, 2011 WL 5506904, at *7 (E.D. Mich. Oct. 21, 2011) (noting that even if the defendant violated 18 U.S.C. §§ 241 or 242, "these criminal statutes do not provide Plaintiff with a private cause of action"). Therefore, these claims will be dismissed.

### 5. Libel and Slander Under M.C.L. § 600.2911

Plaintiff alleges that Defendants Solomon, Winfield, Lew, Sultan, Koretsky, Kehew, Kalafut, and Ryder committed various acts of libel and slander against Plaintiff in violation of M.C.L. § 600.2911. Defendants contend that they are entitled to dismissal because Plaintiff's libel and slander claims are barred by the one-year statute of limitations for such claims. *See* M.C.L. § 600.5805(9). Defendants contend that Plaintiff's claims are time-barred because May 10, 2010 is the latest statement identified in the Amended Complaint, but Plaintiff waited until August 6, 2012—more than two years later—to file his Complaint.

Plaintiff does not dispute that his libel and slander claims are subject to a one-year limitation period, but he contends that he is entitled to equitable tolling because his Freedom of Information Act (FOIA) requests to the WMU Defendants were repeatedly denied. Plaintiff admits, however, that he received the "defamation messages" from the WMU Defendants at the end of July 2010, as well as in March 2012. (Pl.'s Resp. to Defs.' Mot. at Page ID 402.)

Michigan courts hold that the doctrine of equitable tolling "may be invoked when traditional equitable reasons compel such a result." *McDonald v. Farm Bureau Ins. Co.*, 480 Mich. 191, 204, 747 N.W.2d 811, 819 (2008). "Although courts undoubtedly possess equitable power, such power

7

has traditionally been reserved for 'unusual circumstances' such as fraud or mutual mistake." *Devillers v. Auto Club Ins. Ass'n*, 473 Mich. 562, 590, 702 N.W.2d 539, 556 (2005). A court thus should not allow equitable tolling when doing so would be contrary to an express statutory time limitation. *Id.* at 591, 702 N.W.2d at 556. A court should apply equitable tolling only when "the plaintiff is prevented in some extraordinary way from asserting his rights" *Downs v. Keebler*, Nos. 253611, 256462, 255045, 256422, 2006 WL 3422546, at *14 (Mich. Ct. App. Nov. 28, 2006) (per curiam) (citing 51 Am. Jur. 2d *Limitation of Actions* § 174 at 564), and plaintiff diligently asserts his rights. *Id.* (citing 51 Am. Jur. 2d *Limitation of Actions* § 175 at 564).

In the instant case, Plaintiff alleges no facts showing that fraud, mutual mistake, or some other extraordinary circumstance prevented Plaintiff from filing his Complaint within the one-year limitation period. Although Plaintiff suggests that WMU's delay in responding to Plaintiff's FOIA requests prevented Plaintiff from timely filing his libel and slander claims, Plaintiff acknowledges that he received the allegedly defamatory messages during July 2010—more than two years before Plaintiff filed his Complaint. Plaintiff has thus failed to show both that some extraordinary circumstance prevented him from filing his claim and that he diligently pursued his rights. Therefore, the Court will not apply equitable tolling for Plaintiff's libel and slander claims.

### 6. Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1985

Finally, Plaintiff alleges that Defendants Barnes, Solomon, Lew, Koretsky, Kehew, Kalafut, Ryder, and Dunn engaged in a conspiracy to deprive Plaintiff of his civil rights, in violation of 42 U.S.C. § 1985. Although Plaintiff does not identify which subsection of § 1985 Defendants allegedly violated, the Court assumes that Plaintiff relies on subsection (3), as subsections (1) and (2) do not appear applicable in any manner in this case. Subsection (1) prohibits interference with federal officers in the performance of their duties. The first clause of subsection (2) forbids

conspiracies to, among other things, deter or intimidate parties or witnesses from attending or testifying in a proceeding in federal court or influencing or punishing federal jurors, while the second clause of subsection (2) forbids conspiracies to interfere with due process in state courts with the intent to deprive persons of their equal protection rights. *See Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006). Thus, neither subsection (1) nor subsection (2) aligns with Plaintiff's allegations.

Section 1985(3) imposes civil liability upon the participants in a conspiracy intended to deprive, "either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must allege: "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S. Ct 3352, 3356 (1983)). Moreover, "'conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.'" *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). Finally, the plaintiff must "allege . . . some class-based discriminatory animus behind the conspirators' action." *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (1971)).

Plaintiff's conspiracy claim fails for several reasons. First, although Plaintiff uses the term "conspiracy" throughout his Amended Complaint, Plaintiff fails to allege with any specificity facts

showing the existence of a conspiracy, or agreement, by Defendants to deprive Plaintiff of his civil rights. Instead, Plaintiff simply alleges that each Defendant committed one or more isolated act and concludes that such act was part of a conspiracy with other Defendants. Absent from Plaintiff's allegations, however, are any specific facts suggesting that these separate acts were part of a conspiracy.[3] Second, Plaintiff fails to allege any facts showing that Defendants acted with some class-based animus. For example, Plaintiff does not allege that Defendants committed the alleged acts because they were motivated by some animus against Egyptian or Muslim students. In short, nothing in the Amended Complaint shows that Defendants conspired to deprive Plaintiff of his right to equal protection of the laws because of class-based animus. Finally, Plaintiff's claim is barred by the intracorporate conspiracy doctrine recognized by the Sixth Circuit in § 1985(3) cases. The doctrine holds that members of the same legal entity—for example, employees or agents of a corporation—generally cannot conspire with one another, so long as the alleged acts were within the scope of the defendants' employment or the entity's legitimate activity. *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509–510 (6th Cir. 1991). The intracorporate conspiracy doctrine defeats Plaintiff's conspiracy claim because all of the participants in the alleged conspiracy were employees of the same entity and were acting within the scope of their employment as part of WMU's legitimate activity as an educational institution. Accordingly, Plaintiff's conspiracy claim under § 1985(3) must be dismissed.

B.     **Request to Amend**

The Court interprets various statements in Plaintiff's response as a request to amend. To the extent Plaintiff actually intended to request an opportunity to amend, such request will be denied.

---

[3]Plaintiff asserts in his response that the alleged violations of the Michigan criminal statutes establish the conspiracy. The Court disagrees. Regardless of whether those statutes permit a private right of action, the Amended Complaint fails to allege how Defendants violated those statutes or how such alleged violations were part of a conspiracy.

Although "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), Plaintiff has already amended his Complaint once, and he has not shown that any proposed amendment would cure the deficiencies that require dismissal of his Amended Complaint. *See Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 574 (6th Cir. 2010) (noting that a district court may deny leave to amend a complaint as futile where the proposed amendment would not survive a motion to dismiss). Therefore, the Court concludes that justice does not require that Plaintiff be afforded another opportunity to amend his pleading against the WMU Defendants.

### C. Dismissal of Claims Against the Student Defendants

In Counts IX and X, Plaintiff alleges that the student Defendants violated M.C.L. § 445.1671, M.C.L. § 752.11, and 18 U.S.C. §§ 241 and 242. For the reasons stated above, Plaintiff has no valid claim under these statutory provisions. Because Plaintiff alleges no other basis for his claims against the student Defendants, the Court will dismiss Plaintiff's claims against the student Defendants.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant the WMU Defendants' Motion to Dismiss in its entirety. In addition, because Plaintiff fails to allege valid claims against the student Defendants, the Court will also dismiss those claims. Finally, the Court will deny Plaintiff's request to amend.

An Order consistent with this Opinion will be entered.


Dated: June 27, 2013                                /s/ Gordon J. Quist
                                                GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE